UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CHINDA TITH**,                                        Civil Case No. 3:12-CV-00528-KI

                        Plaintiff,

                                   OPINION AND ORDER

               v.

**MICHAEL J. ASTRUE**, Commissioner,
Social Security Administration,

                        Defendant.


      Merrill Schneider
      Schneider Kerr Law Offices
      P. O. Box 14490
      Portland, Oregon  97293

             Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Willy M. Le
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Chinda Tith brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

Page 2 - OPINION AND ORDER

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

        The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on

the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520

and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful

activity."  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether

the claimant has a medically severe impairment or combination of impairments.  A severe

impairment is one "which significantly limits [the claimant's] physical or mental ability to do

basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a

severe impairment or combination of impairments, disability benefits are denied.

        If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ found Tith had severe impairments of migraine headaches and fibromyalgia, but that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Appendix 1.  After reviewing the medical record and taking testimony from a medical expert, the ALJ found Tith has the residual functional capacity to perform less than the full range of light work, can walk at one time about four blocks on a level surface, can stand about one hour, can sit for an hour, can climb twelve steps at a time, can push or pull a maximum of 20 pounds for not more than five minutes at a time, has functional eyesight and hearing, can drive a motor vehicle, and has impairments that cause a moderate limitation in concentration and memory.  The ALJ found Tith was not credible when she claimed symptoms inconsistent with the residual functional capacity.  Tith does not object to the credibility finding.  Based on vocational expert testimony, the ALJ found Tith could work as a small products assembler or cashier and thus was not disabled under the Act.

## FACTS

Tith was 43 years old when the ALJ issued the opinion.  She claims to have been disabled from migraines and fibromyalgia since January 1, 2006.  Tith is a high school graduate and has worked as a casino runner, grocery store cashier, and cleaner.  She lives with her husband and two teenaged children.

Tith claims to suffer from 20 to 25 migraines a month.  The fibromyalgia causes pain in her head, neck, shoulders, arms, and legs.  She can perform household chores which take no more than 30 minutes.  Longer chore sessions cause Tith to sleep for much of the rest of the week.  She controls the pain with prescription medication, acupuncture, and massage.  With medication, Tith now sleeps well at night but still needs to take a two to three hour nap during the day twice a week.

Page 5 - OPINION AND ORDER

**DISCUSSION**

I.    Exertional Limitations in the Residual Functional Capacity

As part of Tith's residual functional capacity, the ALJ found she can perform less than the full range of light work, can walk at one time about four blocks on a level surface, can stand about one hour, can sit for an hour, can climb twelve steps at a time, and can push or pull a maximum of 20 pounds for not more than five minutes at a time.

Tith argues the ALJ failed to establish the maximum amount of sitting, standing, and walking she can engage in, as required by regulation. Tith interprets the ALJ's limitations as stating how much Tith can do at one time, rather than the maximum amount she can engage in during the eight-hour work day.

The Commissioner contends the ALJ did state Tith's maximum ability to sit, stand, and walk during a work day when he gave examining neurologist Dr. Tatsuro Ogisu's opinion "some weight" and incorporated additional walking limitations based on Tith's testimony. Moreover, the ALJ adopted the opinion of a state agency consultant, Dr. Sharon Eder, who had stated the same limitations.

Residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day for five days a week, or the equivalent. SSR 96-8p, 1996 WL 374184, at *1. The Social Security Ruling explains several times that the ALJ must determine the person's maximum ability. "Ordinarily, [residual functional capacity] is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a *regular and continuing* basis . . . ." Id. at *2. "[Residual functional capacity] does not represent

Page 6 - OPINION AND ORDER

the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  Id.  In

the narrative, the ALJ "must . . . describe the maximum amount of each work-related activity the

individual can perform based on the evidence available in the case record."  Id. at *7.  More

specifically:

> Exertional capacity addresses an individual's limitations and restrictions of
> physical strength and defines the individual's remaining abilities to perform each
> of seven strength demands:  Sitting, standing, walking, lifting, carrying, pushing,
> and pulling.  Each function must be considered separately (e.g., "the individual
> can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final
> [residual functional capacity] assessment will combine activities (e.g.,
> "walk/stand, lift/carry, push/pull").

Id. at *5.

The ALJ's treatment of the opinions of Dr. Ogisu and Dr. Eder are folded into the stated

residual functional capacity.  There is no way to determine, for example, which part of

Dr. Ogisu's opinion the ALJ gave weight to and which part the ALJ found unpersuasive.  Thus,

the fact that Dr. Ogisu stated his opinion in the more traditional format of Tith being able to sit

for at least six hours in a work day and stand and walk at least six hours in a work day does not

resolve the issue.  Further, the ALJ found Tith could perform *less than* the full range of light

work.  Thus, the ALJ must state which parts of the full range of light work are beyond Tith's

capability.

I agree with Tith that I must interpret the ALJ's statement of her residual functional

capacity to mean she can walk at one time about four blocks, can stand at one time for about one

hour, and can sit at one time for about one hour.  Tith possibly could combine many of these one

hour blocks into an eight hour work day, but the ALJ did not make the finding that she had the

capacity to do so.  Interpreting the residual functional capacity in any other way results in Tith

only being able to stand for an hour, sit for an hour, and walk four blocks, essentially unable to complete even half of a work day. The ALJ would have found Tith disabled under this alternative.

I find the ALJ did not follow the correct legal standards in formulating the exertional limitations in the residual functional capacity when he did not state the maximum amount of each activity Tith could perform in a work day.

II.    Mental Limitations in the Residual Functional Capacity

In formulating Tith's residual functional capacity, the ALJ found she had impairments that cause a moderate limitation in concentration and memory.

Tith contends the mental limitation the ALJ formulated for her residual functional capacity is vague and uses a term–moderate–which is not defined for purposes of work functions. According to Tith, the residual functional capacity does not establish her capabilities in work-related functions, specifically, how frequently and in what ways Tith's limited ability to concentrate and remember would impact her work performance.

The Commissioner argues the term moderate is used at step two to evaluate a claimant's ability to perform activities of daily living, social functioning, and concentration, persistence, and pace. Thus, the vocational expert would understand the term.

As a threshold matter, I am unpersuaded by the Commissioner's waiver argument–that Tith's counsel should have addressed at the hearing any vagueness problem caused by the term moderate. The Commissioner relies on Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), for its statement that counsel must raise "all issues and evidence at their administrative hearings in order to preserve them on appeal." Meanel concerned new statistics on job availability, which

is an evidence issue; Tith is raising more of a legal issue about the use of a term. I think the

difference is material, thus I will decide the issue on the merits.

The ALJ's opinion touched on the Commissioner's argument:

> *The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). *Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.*

Tr. 24 (emphasis added).

The problem with the last sentence in this statement, and the residual functional capacity

the ALJ formulated for the vocational expert's hypothetical, is that the last sentence directly

contradicts the first sentence. More precisely, a moderate limitation in concentration and

memory does not explain the "more detailed assessment" required by the residual functional

capacity assessment. I realize the ALJ found Tith's mental impairments were not severe, but the

residual functional capacity must be stated in terms of the claimant's ability to perform sustained

work-related mental activities. SSR 96-89 at *1. Examples of the more detailed assessment are

contained in the Mental Residual Functional Capacity Assessment, such as the amount of

limitation in the ability to understand and remember detailed instructions or the amount of

limitation in the ability to maintain attention and concentration for extended periods. There was

no discussion between the ALJ and the vocational expert indicating the vocational expert

translated the ALJ's hypothetical into detailed limitations of Tith's ability to function at work.

For this reason, I find the ALJ did not follow the correct legal standards when formulating the mental limitations in the residual functional capacity because he did not provide an assessment containing enough detail.

III.     Medical Opinions

Tith claims the ALJ erred by failing to give sufficient reasons for rejecting the manipulative and lifting limitations recommended by Dr. Ogisu.  Tith argues the error is not harmless because both jobs the vocational expert identified are light work that require frequent handling and fingering.

I will first address the lifting limitation.  Dr. Ogisu opined Tith "should be able to . . . lift and carry up to 10 pounds, perhaps more, on an occasional basis."  Tr. 246.  The ALJ gave the opinion "some weight because it is generally consistent with the medical evidence of record."  Tr. 29.  Based on Tith's testimony, the ALJ limited Tith's ability to walk beyond Dr. Ogisu's opinion.  He did not address the lifting limitation other than reciting Dr. Ogisu's opinion.

Dr. Eder opined Tith could lift and carry 10 pounds frequently and 20 pounds occasionally.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 316.967(b).  The ALJ adopted Dr. Eder's recommendation for light work but gave no reason for choosing her opinion over that of Dr. Ogisu.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a

treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Widmark, 454 F.3d at 1066 n.2.

Although Dr. Eder contradicted Dr. Ogisu's opinion on lifting limitations, the ALJ failed to give any reasons, much less specific and legitimate reasons, for disregarding Dr. Ogisu's opinion. Moreover, because Dr. Eder is a nonexamining physician, her opinion alone would be insufficient to constitute substantial evidence to reject Dr. Ogisu's opinion.

I will now address the manipulation limitation. Dr. Ogisu stated, "She should be able to perform light gross and fine manipulation at least occasionally." Tr. 246.

The Commissioner argues Dr. Ogisu did not place any manipulative limitations on Tith because the doctor did not state any specific maximum manipulative limits.

I agree with the Commissioner that Dr. Ogisu did not assign a manipulative limitation to Tith when he opined she could perform light gross and fine manipulation *at least occasionally*. A limitation would be stated in terms such as "at most" or "no more than." Thus, the ALJ did not improperly address a manipulative limitation.

IV.    Remedy

The ALJ erred in formulating the mental and physical limitations in the residual functional capacity and in failing to address Dr. Ogisu's lifting limitation.  Consequently, the vocational expert testimony has no evidentiary basis.  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant).

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.

Here, there are many issues to be addressed.  The ALJ must properly formulate the residual functional capacity and take new vocational expert testimony.  Therefore, I remand the action for rehearing.

**CONCLUSION**

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____24th_____ day of April, 2013.

_____/s/ Garr M. King_____
Garr M. King
United States District Judge